# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**NORMA J. LOPEZ,**

    **Plaintiff,**

    vs.                                                      Civ. No. 16-1077 SCY

**NANCY A. BERRYHILL, Acting**
**Commissioner of the Social Security**
**Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 15),[2] filed December 22, 2017, in connection with Plaintiff's *Motion to Reverse and Remand Administrative Agency Decision, With Supporting Memorandum,* filed February 26, 2018. Docs. 19, 20. Defendant filed a Response on April 12, 2018. Doc. 21. Plaintiff did not file a Reply. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is not well taken and shall be **DENIED.**

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Norma J. Lopez (Ms. Lopez) alleges that she became disabled on August 23, 2012, at the age of fifty-seven, because of arthritis in both hips and knees, knee surgeries, and diabetes. Tr. 69, 185. Ms. Lopez completed her GED in 1990, and worked as a scale, equipment

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Doc. 18.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 15), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

1

and control house operator, and as a microchip inspector. Tr. 187, 200-11. Ms. Lopez's date of last insured was December 31, 2016. Tr. 13.

Ms. Lopez protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, on October 22, 2012. Tr. 141-42, 182. Ms. Lopez's application was denied at the initial level. Tr. 68, 69-78, 79-81.[3] Upon Ms. Lopez's request, Administrative Law Judge (ALJ) Donna Montano held a hearing on March 18, 2015. Tr. 28-63. Attorney Justin S. Raines represented Ms. Lopez.[4] *Id.* On April 22, 2015, ALJ Montano issued a written decision concluding that Ms. Lopez was "not disabled" pursuant to the Act. Tr. 8-21. On July 31, 2016, the Appeals Council denied Ms. Lopez's request for review, rendering ALJ Montano's April 22, 2015, decision the final decision of Defendant the Commissioner of the Social Security Administration. Tr. 1-3. Ms. Lopez timely filed a complaint on September 29, 2016, seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits or supplemental security income if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Social Security Commissioner has adopted a five-step sequential analysis to

---

[3] The Administrative Record does not contain any information related to reconsideration.

[4] Ms. Lopez is represented in this proceeding by Jeffrey Diamond. (Doc. 1.)

2

determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. §§ 404.1520, 416.920.

The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

**B.** **Standard of Review**

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in

3

reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III. ANALYSIS

The ALJ made her decision that Ms. Lopez was not disabled at step four of the sequential evaluation. Tr. 20-21. The ALJ determined that Ms. Lopez met the insured status requirements of the Social Security Act through December 31, 2016, and that she had not engaged in

4

substantial gainful activity since August 23, 2012, the alleged onset date. Tr. 13. She found that Ms. Lopez had severe impairments of degenerative joint disease, degenerative disc disease, status-post reconstructive surgery of a weight bearing joint, and obesity. *Id.* The ALJ determined, however, that Ms. Lopez's impairments did not meet or equal in severity one of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 13-14. Accordingly, the ALJ proceeded to step four and found that Ms. Lopez had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except

> she can stand and walk for four hours out of an eight-hour workday. The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; however, she can never climb ladders, ropes, or scaffolds. Additionally, she should avoid concentrated exposure to unprotected heights and machinery.

Tr. 14-15. The ALJ concluded at step four that Ms. Lopez was able to perform her past relevant work as an inspector semiconductor wafer and that she was, therefore, not disabled. Tr. 20-21.

Plaintiff argues that (1) the ALJ's RFC is not supported by substantial evidence because the record demonstrates she was only capable of, at most, sedentary work during the relevant period of time; (2) the ALJ erred by failing to consider a closed period of disability; and (3) the ALJ's hypothetical to the VE was erroneous because it included the ability to stand and walk for four hours out of an eight-hour workday when light work requires the ability to stand or walk for a total of six to eight hours in an eight-hour workday. Doc. 20 at 4-11. For the reasons discussed below, the Court finds no reversible error.

### A. **Relevant Medical Evidence**

#### 1. **Joseph K. Ford, M.D.**

Joseph K. Ford, M.D. treated Ms. Lopez in September 2009 and from December 5, 2011, through August 23, 2012, for issues related to her left knee. Tr. 254-56, 257-64. On

5

September 2, 2009, Dr. Ford performed a repair of the quadriceps mechanism of Ms. Lopez's left knee based on Ms. Lopez's history of patellectomy and quadricep insufficiency with pain. Tr. 254-55. Post-operative care included pain management and the use of a walker. Tr. 256.

On December 5, 2011, Ms. Lopez returned to Dr. Ford with complaints of pain in the quadriceps musculature. Tr. 264. On physical exam, she was able to extend her left knee fully to 180 degrees and flex to 120 degrees. *Id.* Radiographic studies of both knees indicated no sign of arthritis. *Id.* Dr. Ford prescribed a nonsteroidal anti-inflammatory (Mobic) and narcotic pain medication (Tramadol). *Id.* On February 21, 2012, based on subsequent MRI studies, Dr. Ford assessed that Ms. Lopez was developing degenerative changes in the articular cartilage and joint related to her left knee injury. Tr. 262. He determined that she was a candidate for SUPARTZ injections and administered five injections over the course of five weeks. Tr. 258-61. On August 23, 2012, Ms. Lopez complained of some left knee pain. Tr. 257. Dr. Ford noted that her left knee was doing satisfactorily, but that radiographic studies had revealed she was developing some chondrocalcinosis and would require continued conservative management with medication. *Id.*

  **2.**  **Michael Sisk, M.D.**

On October 18, 2012, Ms. Lopez presented to Michael Sisk, M.D., with complaints of left hip pain that radiated down toward her knee and into her back. Tr. 288. Dr. Sisk noted on physical exam that Ms. Lopez "[c]learly has restrictions of motion in that left hip." *Id.* Radiographic studies demonstrated arthritis of the left hip. *Id.* Dr. Sisk administered a steroid injection. *Id.* On October 24, 2012, Ms. Lopez returned for a second injection. Tr. 287. On November 7, 2012, Ms. Lopez reported that although she had considerable relief right after the

injection, her pain had returned quickly. Tr. 286. Dr. Sisk discussed Ms. Lopez's options, and noted that she wished to proceed with arthroplasty. *Id.*

On January 9, 2013, Ms. Lopez underwent a total left hip arthroplasty. Tr. 266-82. On January 16, 2013, Dr. Sisk noted that Ms. Lopez was "doing great" postoperatively. Tr. 285. On February 20, 2013, Dr. Sisk released Ms. Lopez to unrestricted activity. Tr. 284.

On March 25, 2013, Ms. Lopez returned to Dr. Sisk with complaints of left knee, left leg and lower back pain. Tr. 283. Following a physical exam, Dr. Sisk assessed degenerative disc disease of the lumbar spine with left leg radiculopathy. *Id.* He planned to obtain an MRI of Ms. Lopez's lumbar spine. *Id.* On March 17, 2013, Dr. Sisk noted that Ms. Lopez had foraminal and canal stenosis. Tr. 358. Dr. Sisk discussed physical therapy and the possibility of an injection with Ms. Lopez. *Id.* Ms. Lopez reported that she was leaving to "go back south," and would not be back until June. *Id.*

On June 19, 2013, Ms. Lopez presented to Dr. Sisk requesting an impairment rating for her workers compensation carrier regarding her left knee. Tr. 313. Dr. Sisk noted that he agreed she had a permanent impairment from her left knee situation, but that he did not perform impairment ratings. *Id.* He added that "[t]here is no question that she has lost power within the leg because of the patellectomy and probably does have some level of chronic pain within the knee[.]" *Id.* Dr. Sisk agreed to refer her to an appropriate physician to get an impairment rating. *Id.*

Ms. Lopez last saw Dr. Sisk on July 3, 2013, and complained of continued pain in her left leg. Tr. 356. Dr. Sisk noted he did not see any evidence of pain originating from her left hip joint, and thought the pain could be of spinal origin. *Id.* Dr. Sisk referred Ms. Lopez to Dr. Siegel. *Id.*

7

### 3. Henry Fabian, M.D.

On July 23, 2013, Ms. Lopez saw Henry Fabian, M.D., with complaints of left lower extremity radiculopathy getting progressively worse. Tr. 355. On physical exam Dr. Fabian noted adequate strength to the left lower extremity and no pain of the hip. *Id.* Dr. Fabian noted spinal stenosis at L5-S1 and L2-3. *Id.* Ms. Lopez indicated she was getting relief with sitting posture. *Id.* Dr. Fabian recommended an outpatient procedure to open up the L5-S1 exit zone. Id. Ms. Lopez took the recommendation under advisement. *Id.* Dr. Fabian prescribed hydrocodone for pain. *Id.*

### 4. Taddy Healthcare Services, LLC

On October 31, 2013, Ms. Lopez established care with Taddy Healthcare Services, LLC, in Carlsbad, New Mexico, and reported back pain. Tr. 364. DO Nii Tetteh Addy referred Ms. Lopez for an MRI and based on those findings, on November 20, 2013, assessed chronic lumbar back pain with radiculopathy. Tr. 363.

### 5. Spine and Orthopedic Center of New Mexico

On January 29, 2014, Ms. Lopez presented to Omar Osmani, M.D., of Spine and Orthopedic Center of New Mexico, in Roswell, New Mexico, complaining of low back pain. Tr. 375-79. Following a physical exam and review of radiographic studies, Dr. Osmani assessed that Ms. Lopez was suffering from a disc herniation at the L5-S1 level with back pain and left radiculopathy/radiculitis associated with mild to moderate pain. Tr. 378. He planned to start Ms. Lopez on physical therapy of the lumbar spine, deep heat, ultrasound, massage, abdominal strengthening exercises, electrical stimulation and nonsteroidal anti-inflammatory drugs. *Id.* He instructed Ms. Lopez to return in one month. *Id.*

On June 19, 2014, Ms. Lopez saw Cydney Roller, CNP, and complained of pain in her lower back with left-sided radiculopathy. Tr. 372-74. CNP Roller noted that Ms. Lopez had completed a full course of physical therapy and was using nonsteroidal anti-inflammatory drugs, but continued to be symptomatic. Tr. 374. CNP Roller considered a lumbar spine MRI, and suggested that Ms. Lopez might be a candidate for pain management. *Id.*

On August 1, 2014, Ms. Lopez saw Dr. Osmani and complained of low back and right groin pain. Tr. 367-71. Following a physical exam and review of radiographic studies, Dr. Osmani assessed osteoarthritis right hip and spine stenosis. Tr. 370. Dr. Osmani considered Ms. Lopez a "level two which means that she needs some interventional pain management on top of self instituted exercises and anti-inflammatory medications. If this fail[s], then the patient would be a candidate for surgical intervention with decompression and possible stabilization." *Id.* Dr. Osmani referred Ms. Lopez for pain management and instructed her to continue self instituted exercises. *Id.*

On February 5, 2015, Ms. Lopez saw Dr. Osmani and reported that her low back still hurt. Tr. 440-44. Dr. Osmani performed a physical exam and reviewed radiographic images. Tr. 442-43. Dr. Osmani assessed that "the patient has degenerative disc disease and mild spinal stenosis at L4-L5 and L5-S1[.] . . . She still has pain in her back but [I] explained to her that she doesn't have any significant finding that warrants surgical intervention at this point in time." Tr. 443. Dr. Osmani instructed Ms. Lopez to continue with pain management and follow up when necessary. Id.

### 6. **William Baggs, M.D., Orthopedics**

On February 23, 2015, Ms. Lopez presented to William Baggs, M.D., and complained of bilateral knee pain, left greater than right. Tr. 437-38. On physical exam, Dr. Baggs noted, as to

the left knee, that it "[a]ctually does show a pretty good left knee. Range of motion is from 0 to 125 and no effusion. There is a Grade 3 quadriceps strength. There is an absent patella. Tenderness is primarily over the medial joint line." Tr. 437. As to the right knee, Dr. Baggs noted it showed primarily lateral joint line tenderness. *Id.* Dr. Baggs recommended conservative care with Euflexxa injections. Tr. 438. He indicated that Ms. Lopez was probably getting closer to knee replacement. *Id.*

### B. Medical Source Opinion Evidence

#### 1. Michelle L. Smith, M.D.

On May 18, 2013, State agency examining medical consultant Michelle L. Smith, M.D., examined Ms. Lopez. Tr. 307-12. Ms. Lopez's chief complaints were arthritis in both hips and knees, knee surgeries, left hip replacement, and diabetes mellitus. Tr. 307. Ms. Lopez reported that she had a left knee patellectomy in 2000, and that her left knee pain had gotten worse over time and that her knee swells. *Id.* She reported she could walk and had physical therapy in the past. *Id.* She stated she could not do a lot secondary to pain. *Id.* She also reported that she had been to multiple doctors who had told her there was nothing else they could do for her knee pain. *Id.*

Dr. Smith noted she reviewed (1) a February 14, 2012, radiology report related to Ms. Lopez's status post patellectomy; (2) Dr. Sisk's October 18, 2012, outpatient note related to Ms. Lopez's left hip arthritis; (3) the Administration's December 20, 2012, Disability Report; (4) the January 11, 2013, discharge summary related to Ms. Lopez's total left hip arthroplasty; (5) Dr. Sisk's March 25, 2013, outpatient note related to Ms. Lopez's degenerative disc disease with left leg radiculopathy; and (6) an April 3, 2013, radiology report of Ms. Lopez's lumbar

spine. Tr. 307-08. Dr. Smith also indicated under a section titled "Ancillary," that she reviewed radiographic studies that included "Left Knee, 2 views," and "Left Hip, 2 views." Tr. 311-12.

Dr. Smith took Ms. Lopez's histories; *i.e.,* past medical history, past surgical history, social history, and pertinent family history. Tr. 308-09. On physical exam, Dr. Smith noted, *inter alia*, that Ms. Lopez had (1) no discernable discomfort with normal range of cervical and dorsolumbar motion; (2) no discernable hip discomfort during supine examination; (3) negative seated bilateral straight leg test; (4) negative supine bilateral straight leg test; (5) negative bilateral FABERE test; (6) negative bilateral Gaenslen's Sign; (7) negative Milgram's; and (8) flexion 0-135 degrees and extension 135-0 degree of the knee joints. Tr. 310. Dr. Smith noted normal range of motion of bilateral knees, although there was some slight swelling in the left knee. Tr. 311. Dr. Smith noted on spinal exam that "[t]here was no cervical, thoracic, lumbar, or sacral spinous process tenderness to palpation or in accompanying paraspinal areas. No sacroiliac joint, ischial tubercle, or iliac wing tenderness with palpation." *Id.*

Dr. Smith diagnosed obesity, left knee osteoarthritis, and status post left hip replacement. Tr. 312. Dr. Smith assessed that

> [t]here are no recommended limitations on the number of hours the claimant should sit during a normal 8-hour workday. The number of hours she should stand or walk should total 6 hours a day. The amount of weight she should lift or carry is 25 pounds frequently. There are no postural limitations. No assistive devices. No fine motor manipulation limitations. No visual, communicative or workplace environmental limitations.

*Id.*

11

### 2. George Hearne, SDM

On May 30, 2013, nonexamining State agency medical consultant George Hearne, SDM, reviewed Ms. Lopez's medical record evidence[5] and assessed that she could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for four hours; sit for more than six hours on a sustained basis in an 8-hour workday, push and/or pull commensurate with lift and/or carry limitations; frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; never climb ladders, ropes, or scaffolds; and she should avoid concentrated exposure to hazards. Tr. 75-76.

### C. Discussion

#### 1. RFC Assessment

Ms. Lopez first argues that from her alleged onset date to the date of the Administrative Hearing that she was capable of, at most, only sedentary exertional capacity. Doc. 20 at 4-7. In support, Ms. Lopez cites to certain treatment notes in which she complained about and was treated for left knee and/or left hip pain. *Id.* For example, Ms. Lopez cited Dr. Ford's February 21, 2012, treatment note in which he assessed degenerative changes in the articular cartilage and joint related to her left knee and determined she was a candidate for SUPARTZ injections.[6] *Id.* at 4-5. She cited Dr. Sisk's pre-arthroplasty treatment notes in which Dr. Sisk noted that conservative treatment for her left hip pain had failed.[7] *Id.* at 5. She cited Dr. Sisk's

---

[5] Dr. Hearne reviewed (1) Dr. Sisk's October 18, 2012, treatment notes; (2) Dr. Sisk's March 25, 2013, treatment notes; (3) the April 3, 2013, MRI of Ms. Lopez's lumbar spine; (4) Dr. Smith's May 18, 2013, consultative examination report; and (5) the May 18, 2013, x-rays of Ms. Lopez's left knee. Tr. 73.

[6] Ms. Lopez had five SUPARTZ injections. Tr. 258-61. Dr. Ford subsequently noted that her left knee was doing satisfactorily, but that radiographic studies revealed she was developing some chondrocalcinosis and would require continued conservative management with medication. Tr. 257.

[7] Ms. Lopez had a total left hip arthroplasty after which Dr. Sisk noted she did "great," and released her to unrestricted activity at her six-week post-operative appointment. Tr. 284-85.

treatment note in which he declined to provide an impairment rating of her left knee but opined that she had lost power within the leg and had some level of chronic pain within the knee.[8] *Id.* She cited Dr. Fabian's July 23, 2013, treatment note in which he assessed spinal stenosis at L5-S1 and L2-3 and recommended and outpatient procedure to "open up the L5-S1 exit zone."[9] *Id.* at 6. Ms. Lopez also cited Dr. Osmani's March 17, 2015, treatment note in which she complained of ongoing lumbar back pain.[10] *Id.* at 6-7. Ms. Lopez contends that these treatment notes are at odds with Dr. Smith's May 18, 2013, functional assessment and support a more restricted RFC. *Id.*

The Commissioner contends that the ALJ thoroughly reviewed Ms. Lopez's treatment history, including her knee surgery, her total left hip replacement, and her complaints of lower back pain. Doc. 21 at 8. The Commissioner further contends that the ALJ did not fully rely on Dr. Smith's functional assessment, but properly tempered it based on objective medical findings that indicated Ms. Lopez was slightly more limited than Dr. Smith assessed. *Id.* at 9. Finally, the Commissioner contends that there is no other medical source opinion evidence in the record indicating that Ms. Lopez was more limited than the ALJ assessed, and that her arguments to the contrary amount to a request that the Court re-weigh the evidence, which it cannot do. *Id.*

In assessing a claimant's RFC at step four, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the

---

[8] The ALJ accorded Dr. Sisk's opinion little weight. Tr. 19. In doing so, she explained that his statement was vague and did not provide any specific functional limitations pertaining to the claimant's impairments. *Id.* Ms. Lopez has not raised an objection to the ALJ's finding.

[9] Dr. Fabian noted that Ms. Lopez took his recommendation under advisement. Tr. 355. The Administrative Record does not contain any evidence that Ms. Lopez returned to see Dr. Fabian or underwent the outpatient procedure he recommended.

[10] Dr. Osmani's assessment and plan on this date indicated that he explained to Ms. Lopez that she did not have any significant finding to warrant surgical intervention. Tr. 443. He instructed Ms. Lopez to continue with pain management and follow up when necessary. *Id.*

13

record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2) and (3). Most importantly, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003).

The ALJ's RFC is supported by substantial evidence. Here, the ALJ considered all of Ms. Lopez's medically determinable impairments and reviewed all of the evidence in the record as she was required to do. Tr. 15-19. For example, the ALJ discussed Ms. Lopez's left knee surgery and total left hip arthroplasty. Tr. 16. She discussed Ms. Lopez's post-operative care, including physical exams, radiographic studies, and conservative pain management. Tr. 16-17. The ALJ discussed Ms. Lopez's complaints of lumbar back pain and the treatment notes related thereto. Tr. 17. The ALJ also discussed Ms. Lopez's hearing testimony and the functional limitations she reported based on her physical impairments.[11] Tr. 15. Finally, the ALJ discussed and weighed Dr. Smith's medical source opinion.[12] Thus, the ALJ's RFC assessment included a

---

[11] The ALJ found that Ms. Lopez's statements regarding the intensity, persistence, and limited effects of her symptoms were not supported by the evidence. Tr. 15. Ms. Lopez has not raised an objection to the ALJ's finding.

[12] The ALJ accorded Dr. Smith's opinion some weight. Tr. 19. The ALJ explained that

> [a]lthough the objective medical evidence of record does indicate that the claimant can perform light work activity, subsequent objective medical findings indicate that the claimant is slightly more limited than Dr. Smith has opined. An MRI of the claimant's lumbar spine obtained in November of 2013 demonstrated mild retrolisthesis at the L4-L5 level and disc protrusion at the

14

narrative discussion of the evidence, and the ALJ cited to specific medical and nonmedical evidence to support her conclusions.[13]

Moreover, in citing to certain treatment notes that Ms. Lopez argues *could* support a sedentary exertional level, Ms. Lopez essentially asks this Court to reweigh the evidence, which it cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir 2007) ("We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views[.]"). Here, the ALJ demonstrated she considered all the evidence, including the evidence Ms. Lopez cited in her Motion. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (explaining that the record must demonstrate that the ALJ considered all of the evidenced, but an ALJ is not required to discuss every piece of evidence). Because the Court finds that the ALJ's decision is supported by substantial evidence, and because Ms. Lopez's argument goes to the weight of the evidence and not its sufficiency, the Court will not displace the ALJ's decision.

For the foregoing reasons, there is no reversible error as to this issue.

---

L5-S1 level resulting in abutment of the descending S1 nerve roots bilaterally with a mild degree of central canal narrowing. More recently, an examination of the claimant's left knee performed in February of 2015 showed "a pretty good left knee." Joint line tenderness was demonstrated in both knees; however, in the let knee the claimant exhibited a range of motion from zero to 125 degrees with no effusion. Additionally, treatment notes indicate that further conservative treatment was recommended by William Baggs, M.D.

*Id.* Ms. Lopez has not raised an objection to the ALJ's evaluation and weighing of Dr. Smith's opinion.

[13] The ALJ's RFC is also consistent with the only other medical source opinion in the Administrative Record. *See* Section III.B.2, *supra.* The ALJ did not discuss SDM Hearne's opinion and Ms. Lopez has not raised this as an issue. *See Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (finding that an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity).

## 2. Closed Period of Disability

Ms. Lopez next argues that the ALJ failed to consider that Ms. Lopez should have been entitled to at least a closed period of disability from January 24, 2012,[14] through March 18, 2015, for chronic pain due to her "patellectimized left knee and arthritis destroyed left hip." Doc. 20 at 7-10. In support, Ms. Lopez cites to certain treating provider notes demonstrating ongoing treatment for her left knee pain and to Dr. Baggs' February 23, 2015, notation that she was probably getting closer and closer to a knee replacement if conservative therapy failed. *Id.* She cites to the ALJ's comment at the Administrative Hearing that in her experience it takes a person six months to recover from hip arthroplasty. *Id.* at 7. She also cites to treatment related to her lumbar back pain. *Id.* at 8. Lastly, Ms. Lopez asserts that Dr. Smith's opinion failed to address her chronic pain.[15] *Id.* at 9.

The Commissioner contends that Ms. Lopez has failed to cite any evidence to support a finding that she was more limited than the ALJ assessed during any of the relevant time period. (Doc. 21 at 10.)

In a closed period case, the ALJ determines that a claimant was disabled for a specific period of time which both started and stopped prior to the date of the ALJ's decision. *Udero v. Apfel*, 156 F.3d 1245 (10th Cir. 1998) (unpublished)[16] (citing *Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987)). In deciding when to end a closed period of disability, the ALJ must identify specific medical evidence which leads her to conclude the claimant can perform substantial gainful activity. *Id.* (citing *Burress v. Apfel*, 141 F.3d 975, 880 (8th Cir. 1998)).

---

[14] Ms. Lopez's alleged onset date is August 23, 2012. (Tr. 183.)

[15] *See* fn. 12, *supra.*

[16] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

As an initial matter, the Court notes that Ms. Lopez's counsel did not ask the ALJ to consider a closed period of disability. Additionally, Ms. Lopez contradicts herself by on the one hand arguing her condition is worsening; *i.e.,* she is headed for a total knee replacement, Doc. 20 at 10, while on the other hand arguing, without identifying specific medical evidence, that as of March 18, 2015, her condition had improved such that she could perform substantial gainful activity.

That aside, the Court has already found that the ALJ's determination that Ms. Lopez had the ability to do a modified range of light range throughout the relevant period of time is supported by substantial evidence. *See* Section III.C.1, *supra.* Moreover, the ALJ discussed the medical evidence related to Ms. Lopez's post-operative status related to both her left knee and left hip during the relevant time period. Tr. 16. The ALJ concluded, based on the medical record evidence, that Ms. Lopez required only conservative care for her ongoing left knee pain and that she had done "great" following her hip replacement and was taken off restrictions six weeks after surgery. Tr. 16. The ALJ further noted that follow up notes two months after hip surgery indicated that Ms. Lopez's hip replacement was "doing quite well." *Id.* The record supports these findings. Finally, the ALJ thoroughly discussed subsequent treatment notes which consistently recommended conservative care. Tr. 16-19. Because the Court finds that the ALJ's decision is supported by substantial evidence, and because Ms. Lopez's argument goes to the weight of the evidence and not its sufficiency, the Court will not displace the ALJ's decision. *Oldham*, 509 F.3d at 1257-58.

For the foregoing reasons, there is no reversible error as to this issue.

### 3. **Hypothetical to VE**

Finally, Ms. Lopez argues that the ALJ's decision should be reversed because in her hypothetical question to the VE, she asked the VE to "assume an individual of advanced age and she is limited to the following: . . . stand or walk four out of eight [hours]." Doc. 20 at 10. In support, Ms. Lopez concludes, without more, that the hypothetical is clearly erroneous because light work requires an individual to have the ability to stand or walk a total of 6 to 8 hours in an 8-hour day. *Id.* at 11. The Commissioner contends that it is unclear how the ALJ's hypothetical to the VE is error because it is consistent with the ALJ's RFC. Doc. 21 at 10. The Commissioner further contends that Ms. Lopez's argument should be rejected because it is not sufficiently developed. *Id.* at 10-11.

Hypothetical questions should be crafted carefully to reflect a claimant's impairments, as "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision. *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted). Here, the ALJ did not restrict Ms. Lopez to a *full range* of light work.[17] Instead, the ALJ's RFC is for *modified* light exertional capacity; *i.e.,* "she can stand and walk for four hours out of an eight-hour workday." In turn, the ALJ's hypothetical was based on her RFC assessment for *modified* light exertional capacity, which the Court has found is supported by substantial evidence. *See* Section III.C.1, *supra.* As such, the ALJ's hypothetical to the VE related precisely to Ms. Lopez's impairments and the VE's elicited testimony is, therefore, supported by substantial evidence.

For the foregoing reasons, the Court finds no reversible error as to this issue.

---

[17] "[T]he *full range* of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. (Emphasis added.)

## IV. **CONCLUSION**

For the reasons stated above, Ms. Lopez's Motion to Reverse and Remand Administrative Agency Decision, With Supporting Memorandum, is **DENIED.**

**IT IS SO ORDERED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**